IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SHERI DANIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:13-cv-00612-GBL/IDD |
| v. ) | |
| ) | |
| WELLS FARGO BANK, N.A., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on (i) Defendant Wells Fargo Bank, N.A. ("Wells Fargo")'s Motion to Dismiss the Amended Complaint (Doc. 23), (ii) Defendant Fahmey Abdelatey ("Abdelatey")'s Motion to Dismiss the Amended Complaint (Doc. 35), (iii) Defendant Gemini Title & Escrow, LLC ("Gemini Title")'s Motion to Dismiss the Amended Complaint (Doc. 40), and (iv) Bank of America, N.A. ("Bank of America"), U.S. Bank, N.A. ("U.S. Bank"), Equity Trustees, LLC ("Equity Trustees"), and BWW Law Group, LLC ("BWW Law Group")'s Motion to Dismiss the Amended Complaint (Doc. 43). The case concerns Plaintiff's allegations that Defendants, namely Wells Fargo, fraudulently induced Plaintiff to agree to loan modifications on two properties ("the Properties") and caused Plaintiff severe emotional distress in their enforcement of the loan modification agreements. There are four issues before the Court. The first issue is whether Plaintiff sufficiently alleges a fraud claim where she alleges that Wells Fargo misrepresented itself as the secured party (i.e., the mortgagee) on the Properties and misrepresented the need for loan amortization. The second issue is whether Plaintiff sufficiently alleges an intentional infliction of emotional distress ("IIED") claim where Plaintiff alleges that Wells Fargo's implementation of the loan

1

modification agreements caused Plaintiff severe emotional distress. The third issue is whether Plaintiff sufficiently alleges an unjust enrichment claim where Plaintiff alleges that Defendants sold one of the Properties for an amount higher than her loan and that she did not receive the difference between the loan amount and the sale price. The fourth issue is whether Plaintiff sufficiently alleges a quiet title claim on the Properties where Plaintiff admits that she defaulted on the loans for both Properties.

The Court GRANTS all four of Defendants' Motions to Dismiss (Docs. 23, 35, 40, 43). Accordingly, the Court DISMISSES all claims against Defendants Wells Fargo, Abdelatey, Gemini Title, Bank of America, U.S. Bank, Equity Trustees, and BWW Law Group. First, the Court grants Defendants' Motions to Dismiss as to Plaintiff's fraud claim (Count I) because (i) Plaintiff's fraud claims are time-barred and (i) Plaintiff fails to allege facts establishing a plausible claim that Wells Fargo committed a material misrepresentation in executing the loan modification agreements. Second, the Court grants Defendants' Motions to Dismiss as to Plaintiff's IIED claim (Count II) because Plaintiff fails to allege facts establishing a plausible claim that Wells Fargo intended to cause Plaintiff severe emotional distress. Third, the Court grants Defendants' Motions to Dismiss as to Plaintiff's unjust enrichment claim (Count III) because Plaintiff fails to allege facts establishing a plausible claim that the surplus from Wells Fargo's sale of her property was greater than the fees and expenses Wells Fargo incurred in selling the property. Fourth and finally, the Court grants Defendants' Motions to Dismiss as to Plaintiff's quiet title claim (Count IV) because Plaintiff fails to allege facts establishing a plausible claim that Plaintiff has superior title to the Properties.

## I. BACKGROUND

The following is taken from the facts as set forth in Plaintiff's Complaint, which the Court takes as true in reviewing Defendants' Motions to Dismiss. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Plaintiff's claims arise from mortgages originated in June 2005 on a property located at 6929 Pinecrest Avenue, McLean, Virginia ("Rental Property"), and a second property located at 6935 Pinecrest Avenue, McLean, Virginia ("Primary Residence") (collectively "the Properties"). Defendant Wells Fargo acted as the servicing agent on the Properties. Defendant Bank of America acted as the secured party, or lender, on the Primary Residence Loan. Defendant U.S. Bank, as Trustee for the Morgan Stanley Mortgage Loan Trust 2006-11, acted as the secured party, or lender, on the Rental Property Loan.

Following the recession in 2009, Plaintiff had difficulty making her mortgage payments and contacted Wells Fargo for payment assistance. On September 25, 2009, Plaintiff executed a Loan Modification Agreement with Wells Fargo, permanently modifying the Deeds of Trust on the Properties. Am. Compl. Ex. B. The Loan Modification Agreement on the Rental Property identified "Wells Fargo Bank, N.A., d/b/a America's Servicing Company" as the "Lender" of her mortgage. *See id.* The language of the Agreement caused Plaintiff to believe that Wells Fargo was the secured party on her Rental Property Loan (i.e., the mortgagee) and not merely the servicing agent.

The Loan Modification Agreement on the Rental Property converted Plaintiff's mortgage from an interest-only loan to an amortizing loan. This conversion raised Plaintiff's mortgage payments from $3,114.58/month at 5.750% interest to $4,247.70/month at 5.400% interest. *Id.* Ex. A. According to Plaintiff, Wells Fargo informed Plaintiff that the conversion was a mandatory condition of loan modification. *Id.* ¶ 84. Additionally, as a result of interest

capitalization, the principal on Plaintiff's Rental Property Loan increased from $650,000 to $708,206.47. *Id.* Ex. A.

In May 2010, Plaintiff defaulted on the Rental Property. On May 13, 2010, Plaintiff received a letter from counsel to Wells Fargo, Defendant BWW Law Group, scheduling a June 15, 2010 foreclosure sale. Plaintiff alleges that this letter is Plaintiff's first notice that Morgan Stanley was the secured party on her Rental Property Loan, not Wells Fargo, and that Plaintiff's Rental Property Loan had been consolidated into the Morgan Stanley Mortgage Loan Trust 2006-11. In the summer of 2012, Plaintiff reviewed the prospectus for the Trust and found her loan on a list of 856 other loans, more than half of which were interest-only loans.

On May 17, 2010, Plaintiff contacted Wells Fargo a second time for payment assistance, resulting in cancellation of the June 15, 2010 foreclosure sale as Plaintiff and Wells Fargo negotiated a second loan modification. *Id.* Ex. A. Later in the summer of 2010, Wells Fargo denied Plaintiff's request for loan modification stating that Plaintiff did not financially qualify. Plaintiff reapplied for loan modification and was finally rejected in 2012 for failure to establish a new hardship. Between the 2010 denial of Plaintiff's initial application for a second loan modification and the 2012 denial of Plaintiff's reapplication for a second loan modification, Wells Fargo scheduled and cancelled eleven foreclosure sales on the Rental Property. In accordance with Wells Fargo's "Dual Track" Policy, Wells Fargo scheduled and cancelled these sales while simultaneously negotiating Plaintiff's reapplication for a second loan modification. Wells Fargo eventually requested and reviewed a total of 1,000 pages of financial documents from Plaintiff.

With Plaintiff's reapplication for a second loan modification still pending, in mid-April 2012, Plaintiff submitted a separate application for loan modification under the federal Home

Affordable Modification Program ("HAMP"). Wells Fargo accepted Plaintiff's HAMP application for review but stated that it could not review the application until June 1, 2012. On April 25, 2012, Wells Fargo denied Plaintiff's reapplication for a second loan modification, and the next day, on April 26, 2012, Wells Fargo, through Defendant BWW Law Group, sold the Rental Property at a foreclosure sale. The Rental Property was later resold on April 26, 2013 to Defendant Abdelatey.

Plaintiff began suffering serious gastrointestinal problems in early 2011 as a result of the cancelled foreclosure sales. These problems peaked in 2012 and on April 25, 2012, the day before the foreclosure sale, Plaintiff became ill. Plaintiff remained bedridden for six weeks, continuing to suffer from severe gastrointestinal problems. Throughout 2012, Plaintiff contemplated thoughts of suicide. As a result, Plaintiff fell behind on mortgage payments for the Primary Residence. Ultimately, Plaintiff defaulted on the Primary Residence loan, and on November 1, 2012, after rejecting Plaintiff's application for loan modification on the Primary Residence, Wells Fargo sold the Primary Residence at a foreclosure sale. In January 2013, Defendants Bank of America and BWW Law Group initiated an action for unlawful detainer against Plaintiff in regards to the Primary Residence.

Plaintiff seeks (1) rescission of the foreclosure sales to restore Plaintiff's title in the Properties, (2) cessation of the unlawful detainer action by Bank of America and BWW Law Group, (3) an order of compensatory damages in the amount of $350,000 for emotional distress, lost income, and damage to Plaintiff's health, and (4) an order of punitive damages against all Defendants. Plaintiff filed her original complaint on April 24, 2013 in Fairfax County Circuit Court, naming only Wells Fargo as a defendant. Wells Fargo removed the case to this Court on May 17, 2013, and on July 2, 2013, this Court granted Wells Fargo's Motion to Dismiss for

Failure to State a Claim, granting Plaintiff leave to file an amended complaint. Plaintiff filed her amended complaint on July 12, 2013, adding Bank of America, U.S. Bank, BWW Law Group, Equity Trustees, Gemini Title, Tutt Taylor, and Abdelatey as Defendants. In her amended complaint, Plaintiff alleges fraud (Count I), intentional infliction of emotional distress (Count II), unjust enrichment (Count III), and quiet title (Count IV). Plaintiff has not expressly limited specific counts to specific defendants. Thus, the Court construes all four counts as having been asserted against all eight defendants.

Defendants Wells Fargo, Abdelatey, Gemini Title, Bank of America, U.S. Bank, Equity Trustees, and BWW Law Group now move the Court to dismiss the Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.[1]

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "states a plausible claim for relief" under Federal Rule of Civil Procedure 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). No such assumption of truth is afforded to "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citations omitted). Nor is the court

---

[1] Defendant Tutt Taylor was not served with Plaintiff's Amended Complaint until September 12, 2013. (Doc. 60.) Tutt Taylor filed a Motion to Dismiss the Amended Complaint on September 13, 2013, noticed for hearing on October 11, 2013. (Docs. 63, 68.). Tutt Taylor's motion is not presently before the Court.

obligated to assume the veracity of the legal conclusions drawn from the facts alleged. *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (citing *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1979)). Thus, the court's review involves the separation of factual allegations from legal conclusions. *Burnette v. Fahey*, 698 F.3d 171, 180 (4th Cir. 2012). In addition to the complaint, the court will also examine "documents incorporated into the complaint by reference," as well as matters properly subject to judicial notice. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (citations omitted); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

The complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Vitol*, 708 F.3d at 543 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck*, 708 F.3d at 554 (quoting *Iqbal*, 556 U.S. at 678). The plausibility requirement imposes not a probability requirement but rather a mandate that a plaintiff "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, the complaint must present "'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). Thus, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient nonconclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the unlawful act

or omission alleged. *See Giacomelli*, 588 F.3d at 196–97 (citing *Iqbal*, 556 U.S. at 678–79, and *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969–70 (4th Cir. 1992) (en banc)).

B. **Analysis**

  1. *Fraud*

   a. **Statute of Limitations**

The Court GRANTS Defendants' Motions to Dismiss with respect to Plaintiff's fraud claims (Count I) because the claims are time-barred, having been brought more than two years after Plaintiff discovered the fraud alleged. In Virginia, a cause of action for fraud must be brought within two years of the cause of action accruing. Va. Code § 8.01-243 (2007). A cause of action for fraud accrues when such fraud is discovered or when such fraud should, by the exercise of due diligence, have been discovered. *Id.* § 8.01-249. The burden is on the plaintiff to show that she acted with due diligence and yet could not have discovered the fraud until the two years immediately preceding commencement of the action. *See Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962).

The facts set forth in Plaintiff's amended complaint show that Plaintiff discovered the alleged fraud more than two years before bringing her cause of action. Plaintiff alleges three acts of fraud by Wells Fargo. First, Wells Fargo misrepresented itself as the secured party on Plaintiff's Rental Property Loan when Morgan Stanley was in fact the secured party. Am. Compl. ¶¶ 58–80. Second, on the basis of this misrepresentation, Wells Fargo fraudulently increased Plaintiff's loan payments by almost $1,200/month. *Id.* ¶¶ 81–88. Third, on the basis of this payment increase and loan conversion, Wells Fargo fraudulently secured mortgage payments from Plaintiff and foreclosed on the Properties. *Id.* ¶¶ 89–94.

The Court now examines the date of accrual for each act of fraud alleged. First, based on a fair reading of the amended complaint, Plaintiff discovered Wells Fargo's misrepresentation of lender identity in May 2010. The amended complaint states that in May 2010, Plaintiff received a Deed of Appointment of Substitute Trustee and that this Deed was "the first notification to the Plaintiff that this loan is in the Morgan Stanley Mortgage Loan Trust 2006-11." *Id.* ¶ 79. Because Plaintiff discovered the true identity of the secured party in May 2010, May 2010 is when Plaintiff's cause of action accrued. Plaintiff filed her original complaint in Fairfax County Circuit Court on April 24, 2013, almost three years from accrual of Plaintiff's cause of action and almost one year beyond the statute of limitations. Accordingly, Plaintiff's claim based on fraudulent misrepresentation of lender identity is time-barred.

Second, Plaintiff discovered Wells Fargo's second alleged act of fraud—misrepresentation as to the payment increase—in September 2009. Plaintiff alleges that Wells Fargo misrepresented the need to amortize her loan to qualify for the loan modification and that because of the amortization, Plaintiff's mortgage payments increased by 29%, thus making the increase in payments fraudulent. However, Plaintiff executed a Loan Modification Agreement clearly establishing a payment schedule of $4,247.70/month at a 5.400% interest rate. *Id.* Ex. B. Therefore, even if Wells Fargo acted fraudulently in increasing Plaintiff's mortgage payments, Plaintiff should have discovered such fraud upon reviewing and signing the Loan Modification Agreement in September 2009. Because more than two years elapsed between Plaintiff's review of the Loan Modification Agreement in September 2009 and Plaintiff's filing of her complaint in April 2013, Plaintiff's claim based on fraudulent payment increase is time-barred.

Third and lastly, that Wells Fargo acted on the terms of Loan Modification Agreement via payment demands and foreclosure sales does not affect when Plaintiff's fraud claim accrued.

To the contrary, Plaintiff was constantly reminded of the terms of the Loan Modification Agreement and if she believed the terms to be fraudulent, Plaintiff could have brought suit during the two-year statutory period. Plaintiff does not allege that she was made aware of new facts that revealed fraudulent behavior not previously discovered. Therefore, Plaintiff's fraud claim based on Wells Fargo's payment demands and foreclosure sales is time-barred.

### b. Failure to Plead Elements of Fraud

Even if Plaintiff's fraud claims were timely made, the Court must nevertheless dismiss the claims because Plaintiff has not pled a plausible claim that Wells Fargo made a material misrepresentation. To establish fraud under Virginia law, a plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005). A fact is material "when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred." *Packard Norfolk, Inc. v. Miller*, 95 S.E.2d 207, 211–12 (Va. 1956) (citations omitted). Materiality is an objective assessment of whether the misrepresentation "would induce a reasonable person to manifest his assent." *See* Restatement (Second) of Contracts § 162, cmt. a (1981).

The Court reviews each act of fraud alleged to assess whether all the elements of fraud have been pled with respect to each act. Beginning with Wells Fargo's misrepresentation of lender identity, Plaintiff asserts that she "relied on the information [that Wells Fargo was serving as her lender] to enter into a contract that she otherwise would not have entered into." Am. Compl. ¶ 94. However, Plaintiff fails to allege any facts supporting her allegation that Plaintiff would not have modified the loan, had she realized that Morgan Stanley was her lender. In their

10

absence, the Court cannot accept as true Plaintiff's "unadorned conclusory allegation[]" that the identity of Plaintiff's lender was a material fact. *See Vitol, S.A.*, 708 F.3d at 543 (4th Cir. 2013) (citations omitted). Moreover, even if the identify of the lender were material to Plaintiff, the relevant inquiry is whether the identity of one's mortgage lender would induce a *reasonable* person to manifest his assent. *See* Restatement (Second) of Contracts § 162, cmt. a (1981). Plaintiff fails to allege any facts establishing that a reasonable person would execute a loan modification because Wells Fargo, not Morgan Stanley, originated the loan. Therefore, assuming that Wells Fargo did misrepresent itself as the lender, the misrepresentation was not material and cannot form the basis of a fraud claim.

Second, with respect to the fraudulent payment increase, Plaintiff has not pled a plausible claim that Wells Fargo committed a misrepresentation in securing the payment increase. Plaintiff asserts that she amortized the Rental Property Loan, increasing her mortgage payments, because Wells Fargo informed her that amortization was necessary to qualify for loan modification. Plaintiff alleges that Wells Fargo's representation was fraudulent because the majority of loans in the Morgan Stanley Mortgage Loan Trust 2006-11 were interest-only loans. However, that fact taken alone cannot establish that Wells Fargo misrepresented the need to amortize. It is entirely conceivable that Wells Fargo made amortization a requirement for Plaintiff's loan because of financial circumstances particular to Plaintiff but did not make amortization a requirement for other loans because of financial circumstances particular to those mortgagors. Without facts indicating the similarity between Plaintiff's financial circumstances and those of mortgagors not required to amortize, Plaintiff's claim that Wells Fargo misrepresented the need to amortize is conceivable but not plausible. Accordingly, Plaintiff has not pled a plausible claim that the need to amortize Plaintiff's loan was indeed a misrepresentation.

Third, with respect to fraudulent payment demands and foreclosure sales, Plaintiff has not pled sufficient facts to establish a plausible fraud. Plaintiff's claim of fraudulent payment demands and foreclosure sales is derivative of Plaintiff's claim of lender-identity fraud. In the Amended Complaint, Plaintiff states that if Wells Fargo fraudulently misrepresented the identity of the lender, "then the inflated demands for payment must be fraudulent and the foreclosure sale that was based on the inflated demands for payment must be fraudulent and voided." Am. Compl. ¶ 92. Because Plaintiff's claim of fraudulent misrepresentation of lender identity fails, so must the claim derivative of that fraud.

### 2. *Intentional Infliction of Emotional Distress*

The Court GRANTS Defendants' Motions to Dismiss with respect to Plaintiff's intentional infliction of emotional distress ("IIED") claim (Count II) because Plaintiff has not pled a plausible claim that Wells Fargo acted intentionally or recklessly to inflict severe emotional distress on Plaintiff. To establish a claim of IIED under Virginia law, a plaintiff must allege "that 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008). IIED claims are "not favored in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury." *Id.* (internal quotation marks omitted).

Although Wells Fargo's "dual-track" policy would certainly be a stressful experience for a mortgagor, Plaintiff has not established that Wells Fargo scheduled foreclosure sales while negotiating loan modifications with the intent of causing Plaintiff severe emotional distress. Plaintiff argues that Wells Fargo acted intentionally in implementing the dual-track policy. Am.

Compl. ¶ 47. However, the intent relevant to an IIED claim is intent to inflict severe emotional distress. *See Almy v. Graham*, 639 S.E.2d 182, 187 (Va. 2007). The intent to implement a dual-track policy has no bearing on the relevant inquiry. Additionally, as the Virginia Supreme Court noted in *SuperValu, Inc. v. Johnson*, prior decisions of that court have involved emotional distress intentionally inflicted by individuals, not by corporate entities. *SuperValu*, 666 S.E.2d at 370. Though the absence of precedent on corporate conduct is not dispositive, its absence reflects the problems in attributing intent to emotionally distress on a corporate entity.

Plaintiff also has not made a plausible claim of reckless infliction of emotional distress—i.e., that Wells Fargo knew or should have known that its conduct would likely cause Plaintiff severe emotional distress. *See Almy*, 639 S.E.2d at 187. Plaintiff points to a letter dated October 17, 2012, two years after the first scheduled foreclosure on the Rental Property and several months after the Rental Property was actually foreclosed upon, as evidence that Wells Fargo knew of the effects of its conduct on Plaintiff. Am. Compl. ¶ 66. A notice of the distress Plaintiff *has* suffered is not evidence that Wells Fargo knew, while engaged in the conduct, that the conduct would cause Plaintiff distress. Therefore, the Court dismisses Plaintiff's claim of intentional infliction of emotional distress.

3. *Unjust Enrichment*

The Court GRANTS Defendants' Motions to Dismiss with respect to Plaintiff's unjust enrichment claim (Count III) because Plaintiff fails to allege a plausible claim that she did not receive the value of the benefit she conferred on Wells Fargo. A claim for unjust enrichment is quasi-contractual in nature and requires a plaintiff to show that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit conferred, and (3) the defendant accepted or retained the benefit under circumstances rendering it inequitable for the defendant to

do so without paying for its value. *See Schmidt v. Household Finance Corp.*, 661 S.E.2d 834, 838 (Va. 2008) (citations omitted). Ordinarily, the benefit conferred is performance on a contract or the transfer of property or services. Restatement (Second) of Contracts § 370 cmt. a. (1981).

Plaintiff has not pled facts to plausibly claim that she did not receive the value of the benefit she conferred on Wells Fargo—i.e., the indebtedness Plaintiff incurred upon modifying her Rental Property Loan with Wells Fargo. Plaintiff's unjust enrichment claim hinges on the plausibility of her assertion that a surplus remained from the April 2013 sale of the Rental Property to Abdelatey, because the loan amount on the Rental Property was $650,000 and the Rental Property sold to Abdelatey for $760,000. However, Plaintiff admits that Wells Fargo incurred late fees and other expenses in foreclosing on the Rental Property, Am. Compl. ¶ 102, and Plaintiff has not alleged facts establishing that a surplus remained once Wells Fargo had accounted for the late fees and other expenses. Therefore, the Court dismisses Plaintiff's unjust enrichment claims.

### 4. *Quiet Title*

The Court GRANTS Defendants' Motions to Dismiss with respect to Plaintiff's quiet title claim (Count IV) because Plaintiff has not pled superior title to the Properties. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 672 S.E.2d 862, 866 (Va. 2009). A party asserting a quiet title action must plead that he or she has superior title to the property. *See id.* To plead superior title to the property, the plaintiff must plead satisfaction of all legal obligations to the party in interest. *See, e.g., Tapia v. U.S. Bank*, 718 F. Supp. 2d 689, 700 (E.D. Va. 2010), *aff'd*, 441 F. App'x 166 (4th Cir. 2011); *Bagley v. Wells*

*Fargo Bank, N.A.*, No. 3:12-CV-617, 2013 U.S. Dist. LEXIS 11880, at *24 (E.D. Va. Jan. 29, 2013).

Plaintiff asserts that she is "the only party to this matter that can prove with legal and equitable ownership interest in the two Properties . . . acquired by lawful means." Am. Compl. ¶ 103. However, Plaintiff admitted that she defaulted on both the Rental Property and the Primary Residence, and her Amended Complaint does not state that she has since satisfied the defaulted obligations. *See, e.g., Tapia*, 718 F. Supp. 2d 689, 700 (E.D. Va. 2010), *aff'd*, 441 F. App'x 166 (4th Cir. 2011); *Bagley*, No. 3:12-CV-617, 2013 U.S. Dist. LEXIS 11880, *24 (E.D. Va. Jan. 29, 2013). Thus, the facts alleged in the Amended Complaint do not establish a plausible claim that Plaintiff has superior title to the Properties. Therefore, the Court dismisses Plaintiff's claim of quiet title.

### III. CONCLUSION

The Court **GRANTS** Defendant Wells Fargo's Motion to Dismiss the Amended Complaint; Defendant Abdelatey's Motion to Dismiss the Amended Complaint; Defendant Gemini Title's Motion to Dismiss the Amended Complaint; and Defendants' Bank of America, U.S. Bank, Equity Trustees, and BWW Law Group's Motion to Dismiss the Amended Complaint. The Court dismisses Plaintiff's fraud claims (Count I) because they are time-barred and because Plaintiff fails to allege facts establishing a plausible claim that Wells Fargo committed a material misrepresentation in executing the loan modification agreements. The Court dismisses Plaintiff's intentional infliction of emotional distress claim (Count II) because Plaintiff fails to allege facts establishing a plausible claim that Wells Fargo acted intentionally or recklessly to cause Plaintiff severe emotional distress. The Court dismisses Plaintiff's unjust enrichment claim (Count III) because Plaintiff fails to allege facts establishing a plausible claim

that any surplus from the April 2013 sale was greater than the fees and expenses Wells Fargo incurred in foreclosing on the Rental Property. Finally, the Court dismisses Plaintiff's quiet title claim (Count IV) because Plaintiff fails to allege facts establishing a plausible claim of superior title.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Wells Fargo's Motion to Dismiss the Amended Complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Abdelatey's Motion to Dismiss the Amended Complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Gemini Title's Motion to Dismiss the Amended Complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Bank of America, U.S. Bank, Equity Trustees, and BWW Law Group's Motion to Dismiss the Amended Complaint is **GRANTED**.

**IT IS LASTLY ORDERED** that no further leave to amend will be granted because Plaintiff has been afforded two full opportunities to plead her claims and the Court's analysis set forth herein demonstrates that further pleading would be futile as a matter of law. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Clerk is directed to forward a copy of this Order to Plaintiff, appearing pro se, and Counsel of Record.

Entered this 17th day of October, 2013.

Alexandria, Virginia
10/17/13

/s/
Gerald Bruce Lee
United States District Judge